# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-0221V
UNPUBLISHED

| | |
|---|---|
| ODETTE DIPIETRO,<br><br>                    Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>                    Respondent. | Chief Special Master Corcoran<br><br>Filed: September 16, 2025 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Julia Marter Collison, U.S. Department of Justice, Washington, DC, for Respondent.*

**RULING ON ENTITLEMENT**[1]

On January 7, 2021, Odette DiPietro filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 16, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I. Relevant Procedural History

On January 3, 2024, Respondent filed a Rule 4(c) Report opposing compensation. ECF No. 34. Petitioner thereafter submitted a Motion for a Ruling on the Record on July 22, 2024. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 37. Respondent opposed the motion on July 26, 2024, reiterating arguments set forth in the Rule 4(c) Report. Respondent's Response to Motion for Ruling on the Record ("Opp."), ECF No. 38. Petitioner filed a reply on September 3, 2024. Petitioner's Reply to Response re Motion for Ruling on the Record ("Reply"), ECF No. 40. The matter is ripe for resolution.

### II. Relevant Factual History

Petitioner's past medical history includes prior chiropractic treatment for pain in the back, pelvic, and sciatica areas. Ex. 3 at 5–10. Petitioner's records do not include references to prior left shoulder pain.

On October 16, 2019, Petitioner received a flu vaccination in her left arm. Ex. 1 at 2. Over six weeks later, on December 6, 2019, Petitioner went to urgent care for left arm pain. Ex. 4 at 11. The record from this treatment event states "10/16/19 got flu shot from walgreens and is still having pain left arm," and that she had a vaccination in her left arm and has had continued pain" *Id.* Physical exam showed no swelling or deformities, but "[l]imited flexion in left shoulder due to pain; [l]imited extension in left shoulder due to pain, [l]imited abduction in left shoulder due to pain." *Id.* at 12. Petitioner was diagnosed with bicipital tendinitis in her left shoulder, and instructed to go to the emergency room should pain persist, and to follow up with her primary care provider in 5-10 days. *Id.* Petitioner received a prescription for Medrol. *Id.*

Petitioner saw, her chiropractor on December 12, 2019, for new cervical, thoracic and lumbar pain of unknown origin. Ex. 3 at 10. A physical examination showed decreased cervical pain that would radiate to the left shoulder and posterior scapula, with decreased cervical range of motion. *Id.* Petitioner was diagnosed with cervicalgia and cervicobrachial syndrome. *Id.* at 11. Petitioner returned to the chiropractor on December 23, 2019, and reported her cervical pain was "occasional," and would radiate to the left shoulder. Ex. 3 at 11–12. She also reported thoracic pain radiating to the left posterior scapula. *Id.*

On January 10, 2020, Petitioner saw her primary care physician ("PCP") for a wellness visit. Ex. 8 at 19–22. Petitioner also reported left arm pain that began in October 2019, when "she went to Walgreens where she got her flu shot in October." *Id.* Petitioner

continued that she returned to the Walgreens over the next six weeks after the shot and was told they "may have shot her nerve" or may have "shot her tendon." *Id.* at 19.[3] The record notes that Petitioner had "not been able to move her arm normally for three months", which was confirmed by a physical examination. *Id.* Petitioner was referred for an MRI, orthopedic consultation and physical therapy. *Id.* at 20.

Between January and April 2020 Petitioner completed 22 physical therapy sessions. Ex. 6 at 71–88; 180-198; 250–267; and 394–412. At Petitioner's first session, she reported that she had a vaccination on October 16, 2019 and had "immediate pain." *Id.* at 403. Petitioner continued that she could not "lift [her] own arm to the front or side." *Id.* Pain was reported to be an 8/10. *Id.* at 404. At Petitioner's final appointment on April 17, 2020, she reported her pain at a 2–3/10 level. *Id.* at 73.

Petitioner had a left shoulder MRI on January 20, 2020. Ex. 8 at 37. The MRI results showed a "chronic low-grade SLAP tear, [t]endinopathy and low-grade partial thickness undersurface tear of the supraspinatus", "[s]mall glenohumeral joint effusion with low-grade chondromalacia"; "adhesive capsulitis" and "mild subcromial/subdeltoid bursitis". *Id.*

On February 6, 2020, Petitioner saw orthopedist Scott Greenberg, D.O. Ex. 5 at 12. Petitioner complained of pain at a level of 8/10, and reported her pain began on October 16, 2019 and has been "continuous since onset." *Id.* at 14. Physical examination showed "tenderness of the subacromial bursa, the subdeltoid bursa, the glenohumeral joint region and the lateral cuff insertion". *Id.* Hawkins' and Neer's test were positive. *Id.* An x-ray also showed mild AC joint arthritis, which may be an underlying pathology unrelated to the vaccine injury. Petitioner received a cortisone injection at that visit. *Id.* at 16.

Petitioner returned to the orthopedist on April 16, 2020. Ex. 5 at 10. Petitioner continued to show signs of adhesive capsulitis and reported pain levels at 6/10. *Id.* No surgery was recommended at the time, but for Petitioner to continue physical therapy. *Id.* at 11.

On August 14, 2020, Petitioner returned to her PCP for an unrelated medical appointment. Ex. 8 at 10. At this visit Petitioner reported that her shoulder pain was "[d]oing much better, but not quite back to normal." *Id.* Petitioner still had some decreased range of motion, but was much improved since her previous visit. *Id.* at 11.

---

[3] Records do not reflect this communication with Walgreens.

Petitioner next saw an orthopedist three years later on August 15, 2023. Ex. 10 at 1. She now reported chronic left shoulder pain that she attributed to an October 2019 vaccination. *Id.* at 4-5. Exam revealed limited range of motion and positive impingement signs. *Id.* An x-ray revealed mild AC joint arthritis and type II acromion process, but Petitioner denied treatment. Prior to August of 2023, Petitioner underwent several eye and esophageal surgeries (Ex. 10 at 3, 5), and received at least three vaccinations in her left shoulder. *Id.* at 2.

Petitioner filed a signed declaration on September 20, 2021. Ex. 9. In her declaration Petitioner describes the events of her vaccination and treatment. *Id.* She also detailed how her injury impacted her daily life, including how it affected her ability to do every daily tasks such as sleeping, carrying groceries, or showering. *Id.* Petitioner filed a supplemental declaration on July 22, 2014, describing her experience with the Walgreens pharmacy and what happened upon her returned to make a complaint. Ex. 11 at 1-2.

Karine Trudel, Petitioner's daughter, submitted an affidavit as well. Ex. 12. She stated that she spoke with her mother weekly, and her mother explained the "hardship during our phone conversations." *Id.* at 1. Ms. Trudel explained that this experience had given her mother "profound anxiety towards taking other recommended vaccines." *Id.* Due to this her mother has "led to her living a more sedentary lifestyle" and "spending an increased amount of time alone." *Id.* at 2.

### III.   Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[4] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

---

[4] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

4

hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

Review of the entire record reveals that a preponderance of the evidence supports the conclusion that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The record preponderantly establishes onset of injury close-in-time to the October 16, 2019 vaccination. Petitioner first reported shoulder pain on December 6, 2019, and noted that she was "still having pain" in her left arm after the flu shot. Ex. 4 at 11. She also described the pain as continuous after the vaccination. *Id.* Further, she linked her shoulder pain to this same vaccination on multiple occasions. *See,* e.g., Ex. 8 at 19-22 (record from January 10, 2020, noting that her left arm pain began in October when she got a flu shot); Ex. 6 at 403 (record from January 17, 2020, reporting her left shoulder pain began with the October 16, 2019 flu vaccine).

Respondent argues that Petitioner sought treatment nearly four months after her vaccination, and that her first reports regarding onset do not describe her pain as immediate. Opp. at 5-6. Additionally, the first records are vague in describing onset. Further, the December 6, 2019 record states the duration of her pain was only two weeks. Ex. 4 at 11.

While Petitioner did delay treatment, and there are some inconsistencies in her reporting, when the record is viewed in its entirety there is ample evidence to find proper onset began near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner generally linked her shoulder pain to the October 16, 2019 vaccination.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.[5]

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 16, 2019, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Petition at 2; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

---

[5] Evidence of arthritis may reveal an underlying pathology that is unrelated to the alleged vaccine injury, however that can be addressed in the damages phase of this case.

**Conclusion**

In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master